Robert C. Niesley, Bar No. 131373
rniesley@wthf.com
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
2040 Main Street, Suite 300
Irvine, CA 92614
Telephone: 949-852-6700
Facsimile: 949-261-0771

Attorneys for Plaintiff
SureTec Insurance Company, Inc.

FILED
2008 AUG 14 PM 3:34
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURETEC INSURANCE COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL HILLCREST, LLC; ENDEV ENTERPRISES, LLC; JAMES W. BRENNAN; LAUREN BRENNAN; THE BRENNAN FAMILY TRUST; EntertainSD, LLC; and JAMES WATSON BRENNAN, INC.,<br><br>Defendants. | Case No. '08 CV 1490 IEG NLS<br><br>**SURETEC INSURANCE CO., INC.'S COMPLAINT FOR:**<br><br>**1) Breach of Contract;**<br>**2) Quia Timet;**<br>**3) Specific Performance;**<br>**4) Declaratory Relief; and**<br>**5) Statutory Reimbursement Pursuant to California Civil Code Section 2487** |

Plaintiff SureTec Insurance Company, Inc. ("SureTec") hereby complains and alleges as follows:

**JURISDICTION AND VENUE**

1. Plaintiff SureTec is a corporation incorporated under the laws of the State of Texas, with its principal place of business in Houston, Texas. All Defendants are citizens residing in the State of California or entities organized pursuant to the laws of the State of California with their principal places of business in the State of California. This court has original jurisdiction under 28 U.S.C. 1332, in that this action is a civil action between citizens of

ORIGINAL

different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand ($75,000.00) dollars.

2. Venue is proper in this judicial district because all of the defendants are subject to personal jurisdiction in this judicial district at the time this action is commenced. The events and circumstances giving rise to this action took place in this judicial district. The contracts that are the subject of this action were entered into in this judicial district and were to be performed in this judicial district.

**GENERAL ALLEGATIONS**

3. Plaintiff SureTec is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business located in Houston, Texas. At all relevant times, SureTec was duly licensed to conduct business in the State of California. SureTec is an admitted surety insurer in the State of California, among other jurisdictions, has offices in the City and County of San Diego, and issues contract surety bonds, among other bonds, and lines of insurance in the course of its business.

4. SureTec is informed, believes and thereon alleges that Defendant EnDev Enterprises, Inc. ("EnDev") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in San Diego, California. At all relevant times, EnDev was duly licensed to conduct business in the State of California. EnDev is the manager of Universal Hillcrest, LLC.

5. SureTec is informed, believes and thereon alleges that Defendant James W. Brennan is a natural person residing in the City and County of San Diego, California. James W. Brennan is a trustee for Defendant The Brennan Family Trust. James W. Brennan is the President of Defendant James Watson Brennan, Inc.

6. SureTec is informed, believes and thereon alleges that Defendant Lauren Brennan is a natural person residing in the City and County of San Diego, California. Lauren Brennan is a trustee for Defendant The Brennan Family Trust.

7. SureTec is informed, believes and thereon alleges that Defendant The Brennan Family Trust (the "Trust") is a trust organized under the laws of the State of California.

Defendants James W. Brennan and Lauren Brennan are the trustees of the Trust.

8. SureTec is informed, believes and thereon alleges that Defendant Universal Hillcrest, LLC, ("Universal") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in San Diego, California. At all relevant times, Universal was duly licensed to conduct business in the State of California.

9. SureTec is informed, believes and thereon alleges that Defendant EntertainSD, LLC, ("EntertainSD") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in San Diego, California. At all relevant times, EntertainSD was duly licensed to conduct business in the State of California. EntertainSD is the sole member of Universal.

10. SureTec is informed, believes and thereon alleges that Defendant James Watson Brennan, Inc. ("JWB") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in the City and County of San Diego. At all relevant times, JWB was duly licensed to conduct business in the State of California. JWB is the manager of EnDev.

11. There exists, and at all times mentioned herein there existed, a unity of interest and ownership between all of the Defendants, and each of them, such that any individuality and separateness between all of the Defendants have ceased. Each and every one of the Defendants is the alter ego of all the other Defendants.

12. Adherence to the fiction of the separate existence between any of the Defendants as entities distinct from any of the other Defendants would permit an abuse of the corporate and limited liability privilege and would sanction fraud and promote injustice because it would allow Defendants, and each of them, to fraudulently manipulate the legal protections given to certain business entities in order to escape liability for their actions and responsibility for their contractual obligations.

13. Prior to August 2007, Defendants EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, approached SureTec to request that SureTec issue surety bonds on behalf of EnDev and Universal, in connection with their performance of construction services.

14. As part of the consideration for issuing aforesaid bonds on behalf of EnDev or Universal, and on or about August 6, 2007, Defendants EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, executed a General Agreement of Indemnity ("GIA") in the County of San Diego, California, pursuant to which EnDev, James W. Brennan, Lauren Brennan and the Trust, agreed, among other things, jointly and severally: (1) to indemnify SureTec against any and all liability for losses and expenses of any kind or nature, including attorneys' fees and costs, incurred by SureTec by reason of having executed or procured the execution of any bonds, or by reason of the failure of Defendants to perform or comply with the covenants, terms and conditions of the GIA; and (2) to deposit collateral with SureTec upon demand to cover anticipated losses that SureTec may incur in connection with any bonds issued on behalf of EnDev or Universal, and each of them. A true and correct copy of the GIA is attached hereto as Exhibit A and incorporated herein by reference.

15. Pursuant to the GIA, EnDev, James W. Brennan, Lauren Brennan and the Trust are obligated to indemnify SureTec with respect to liability arising from "bonds written by or at the request of SureTec as surety, co-surety, or re-insurer on behalf of [EnDev, James W. Brennan, Lauren Brennan and the Trust], or any of them, and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of [EnDev, James W. Brennan, Lauren Brennan or the Trust], their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have any interest or participation whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired." SureTec is informed, believes and thereon alleges that Universal is a wholly or partially owned subsidiary company, subsidiary of subsidiary, proprietorship, division or affiliate, partnership, joint venture or co-venture in which EnDev, James W. Brennan, Lauren Brennan or the Trust, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have an interest or participation whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

16. Pursuant to the request of Defendants, and each of them, and in reliance upon the terms of the GIA, on or about November 30, 2007, SureTec issued surety bonds on behalf of Universal, including but not necessarily limited to, a permit performance bond (the "Permit Performance Bond") in connection with a project commonly known as the University Bar & Grill (the "Project"). The Permit Performance Bond ensured compliance with the City of San Diego's codes and ordinances in connection with improvements to an existing structure at 1202 – 1226 University Avenue in the Hillcrest area of the City of San Diego. The Permit Performance Bond names the City of San Diego as the obligee. A true and correct copy of the Permit Performance Bond is attached hereto as Exhibit B.

17. SureTec is informed, believes and thereon alleges that demands were made against Universal for payment for labor, materials, services, and/or equipment on the Project provided by Rand Engineering ("Rand") in the amount of $91,314.00. Thereafter, SureTec received demands from Rand for payment under the terms and conditions of the Permit Performance Bond.

18. On July 31, 2008, after commencing its investigation of Rand's claim and having established a reserve in relation to the Permit Performance Bond issued on behalf of Universal, SureTec sent a written letter to Defendants, and each of them, demanding that Defendants, and each of them, deposit collateral with SureTec in the amount of $101,314.00 in accordance with the terms of the GIA. A true and correct copy of the letter sent to Defendants is attached hereto as Exhibit C.

19. Defendants, and each of them, have failed and refused to reimburse SureTec for any amount, and have failed and refused to deposit collateral in any amount with SureTec.

20. SureTec, in addition to losses already incurred in connection with Permit Performance Bond claims alleged above, has incurred and will continue to incur costs and expenses, including claim adjustment expenses, consultants' fees and attorneys' fees and costs, as a consequence of SureTec's issuance of the Permit Performance Bond, plus attorneys' fees, expenses and costs prosecuting the instant action.

///

///

**FIRST CAUSE OF ACTION**

**(Breach of Contract Against All Defendants)**

21. SureTec incorporates by reference Paragraphs 1 through 20 as though set forth fully in this cause of action.

22. SureTec is informed, believes and thereon alleges that Defendants, and each of them, requested that SureTec issue the Permit Performance Bond on behalf of Universal.

23. As partial consideration for SureTec's issuance of the Permit Performance Bond, EnDev, James W. Brennan, Lauren Brennan and the Trust executed the GIA (Exhibit A) in favor of SureTec, whereby EnDev, James W. Brennan, Lauren Brennan and the Trust agreed to, among other things, reimburse SureTec for all losses it incurs in connection with the Permit Performance Bond and to deposit collateral with SureTec upon SureTec's demand.

24. SureTec is informed, believes and thereon alleges that demands were made by Rand on Universal for payment for services Rand provided to the Project on which SureTec issued the Permit Performance Bond. Universal has failed and refused to pay Rand.

25. Due to Universal's failure and refusal to pay Rand, Rand has submitted a claim to SureTec for payment pursuant to the terms and conditions of the Permit Performance Bond. SureTec is obligated to investigate and incur costs in relation to Rand's claim against the Permit Performance Bond.

26. SureTec has demanded that Defendants, and each of them, deposit collateral in the amount of $101,314.00 with SureTec for losses and costs and anticipated future losses and costs, as required under the terms of the GIA. Defendants, and each of them, have failed and refused to deposit the requested collateral.

27. SureTec is now required to investigate Rand's claim and pay Rand any amounts owed by Defendants. SureTec anticipates that it will be forced to defend itself in litigation. SureTec's defense and/or payment of Rand's claim asserted against the Permit Performance Bond has required SureTec, and may continue to require SureTec, to pay valid costs and claims, and has caused it, and will continue to cause it to incur costs, expenses and attorneys' fees, all in an amount according to proof.

28. Pursuant to the GIA, EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, agreed, jointly and severally, to "indemnify and save SureTec harmless from and against every claim, demand, liability cost, loss, charge, suit, judgment, award, fine, penalty, and expense which [SureTec] may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefore, including, but not limited to, court costs, mediation and facilitation fees and expenses, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of [EnDev, James W. Brennan, Lauren Brennan and the Trust] under [the GIA]. In the event [SureTec] deems it necessary to respond to, make an investigation of, or settle, defend or compromise a claim, demand or suit, [EnDev, James. W. Brennan, Lauren Brennan and the Trust] acknowledge and agree that all expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred internally or otherwise, and whether or not [EnDev, James. W. Brennan, Lauren Brennan and the Trust] has offered to defend [SureTec], is included as an indemnified expense and shall be paid for by [EnDev, James W. Brennan, Lauren Brennan and the Trust] to [SureTec] on demand." (See Exhibit A, Paragraph 2.) EnDev, James W. Brennan, Lauren Brennan and the Trust have breached the GIA by failing to indemnify and hold SureTec harmless from claims arising from its execution of the Permit Performance Bond.

29. Pursuant to the GIA, EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, agreed, jointly and severally, to deposit collateral with SureTec as soon as liability exists or is asserted against SureTec, whether or not SureTec shall have made any payment therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by SureTec, or (b) such amount as SureTec, in its sole judgment, shall deem sufficient to protect it from loss. (See Exhibit A, Paragraph 3.) SureTec has established reserves in the amount of $101,314.00 and has demanded that Defendants deposit collateral with SureTec in that amount, but Defendants, and each of them, have failed and refused to do so.

30. SureTec has performed all of the terms, covenants and conditions required of it by the GIA and the Permit Performance Bond, except those terms, covenants and conditions waived or excused by Defendants.

31. As a direct and proximate result of the breach of the GIA by EnDev, James W. Brennan, Lauren Brennan and the Trust, SureTec has incurred losses and expenses, and will continue to incur losses and expenses in an amount according to proof, along with attorneys' fees, expenses and costs incurred in prosecuting the instant action.

32. SureTec has been required to retain legal counsel to prosecute the instant action. Pursuant to the terms of the GIA, SureTec is entitled to an award of its attorneys' fees, costs and expenses incurred herein.

**SECOND CAUSE OF ACTION**

**(Quia Timet Against All Defendants)**

33. SureTec incorporates by reference Paragraphs 1 through 32 as though set forth fully in this cause of action.

34. Defendants, and each of them, are obligated under the doctrine of Quia Timet to post collateral security and to reimburse SureTec for all losses and expenses that have been incurred and will be incurred by SureTec as a consequence of the Permit Performance Bond it issued on behalf of Universal.

35. SureTec is informed, believes and thereon alleges that Defendants, and each of them, are indemnitors and/or corporate officers of Universal.

36. SureTec believes, based upon its understanding of the financial status of Defendants and their unwillingness to indemnify SureTec or to post sufficient collateral, that Defendants, and each of them, will attempt to avoid their obligations to indemnify and hold SureTec harmless in accordance with the terms of the GIA by transferring and conveying their assets to satisfy obligations other than those covered by the GIA or otherwise included within the scope of the GIA.

37. SureTec has no adequate remedy at law for the injuries suffered and the injuries it will continue to suffer. SureTec is informed, believes and thereon alleges that Defendants, and

each of them, have exhibited a willingness to evade their obligations and may transfer assets in derogation of the legal and equitable rights of SureTec. If Defendants are not enjoined immediately from transferring their assets, the assets may be disposed of permanently, and Defendants will render themselves insolvent, thereby irreparably harming SureTec.

38. As a proximate result of the conduct of Defendants, and each of them, SureTec has been or will be damaged so long as Defendants are able to evade their obligations to SureTec under the GIA by transferring their assets. The full amount of this damage is not presently know by SureTec, which will amend its complaint to state this amount when the same becomes known to it, or on proof of the damages.

39. SureTec is entitled to receive a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants, and each of them, as well as their agents, servants, assignees, employees, officers, and all persons or entities acting thereunder, in concert with, or for them from transferring any assets absent further court order.

## THIRD CAUSE OF ACTION

**(Specific Performance of Indemnity Agreement Against All Defendants)**

40. SureTec incorporates by reference Paragraphs 1 through 39 as though set forth fully in this cause of action.

41. SureTec, as surety, issued the Permit Performance Bond on behalf of Universal at the request of Defendants, and each of them.

42. SureTec has incurred and will continue to incur losses and expenses as a direct consequence of its issuance of the Permit Performance Bond, and in satisfying Universal's obligations under contracts subject to the Permit Performance Bond.

43. SureTec is entitled to an order compelling EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, to specifically perform pursuant to the terms of the GIA by: (1) indemnifying and holding SureTec harmless for all of its losses, expenses, costs and fees that have been incurred, and continue to be incurred, in connection with its issuance of the Permit Performance Bond; and (2) depositing collateral with SureTec for anticipated additional losses and expenses.

44. SureTec's remedy at law is inadequate in that SureTec is exposed to liability that is not liquidated at this time. Absent equitable relief, SureTec will be irreparably harmed.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief Against EnDev, James W. Brennan, Lauren Brennan and the Trust)**

45. SureTec incorporates by reference Paragraphs 1 through 44 as though set forth fully in this cause of action.

46. An actual controversy has arisen and now exists between SureTec, on the one hand, and EnDev, James W. Brennan, Lauren Brennan and the Trust, on the other. SureTec contends that, pursuant to the GIA, EnDev, James W. Brennan, Lauren Brennan and the Trust are obligated to (1) indemnify SureTec from losses, costs, fees and expenses incurred in connection with the Permit Performance Bond; and (2) post collateral with SureTec for SureTec's additional future losses and expenses that it anticipates that it will incur in connection with the Permit Performance Bond.

47. SureTec desires a judicial determination of the respective rights and duties of SureTec and EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, with respect to the GIA. In particular, SureTec desires a declaration that, as a consequence of having executed the GIA, EnDev, James W. Brennan, Lauren Brennan and the Trust, and each of them, are obligated to (1) indemnify SureTec for all losses, costs, fees, and expenses incurred by SureTec in connection with the Permit Performance Bond; and (2) post collateral with SureTec for the future losses and expenses that it anticipates it will incur in connection with the Permit Performance Bond.

**FIFTH CAUSE OF ACTION**

**(Statutory Reimbursement Against All Defendants)**

48. SureTec incorporates by reference Paragraphs 1 through 47 as though set forth fully in this cause of action.

49. As a consequence of having issued the Permit Performance Bond, Universal became, and are now, obligated to reimburse SureTec for any amount or amounts SureTec distributed or will distribute pursuant to the terms of the Permit Performance Bond and the

contracts bonded by SureTec, including all of SureTec's costs, expenses and fees, in accordance with California *Civil Code* Section 2487.

**PRAYER FOR RELIEF**

WHEREFORE, SureTec prays for judgment as follows:

On the First Cause of Action:

1. For damages in an amount according to proof, but not less than $91,314.00;
2. For prejudgment interest thereon at the legal rate;
3. For reasonable attorneys' fees and costs incurred herein, according to proof;
4. For costs of suit herein; and
5. For such other and further relief deemed necessary and proper by the Court.

On the Second Cause of Action:

1. A temporary restraining order, preliminary and permanent injunction enjoining Defendants, their agents, servants, employees, officers and assigns, and each of them, from transferring any assets absent further court order;
2. For reasonable attorneys' fees and costs incurred herein, according to proof;
3. For costs of suit herein; and
4. For such other and further relief deemed necessary and proper by the Court.

On the Third Cause of Action:

1. For an order compelling Defendants, and each of them, to specifically perform pursuant to the terms of the GIA by: (1) indemnifying and holding SureTec harmless for all of its losses, expenses, costs and fees that have been incurred, and continue to be incurred, in connection with its issuance of the Permit Performance Bond; and (2) depositing collateral with SureTec for anticipated additional losses and expenses;
2. For reasonable attorneys' fees and costs incurred herein, according to proof;
3. For costs of suit herein; and
4. For such other and further relief deemed necessary and proper by the Court.

On the Fourth Cause of Action:

1. A judicial declaration regarding the rights and obligations of the parties to the

GIA. Specifically, a judicial declaration that Defendants, and each of them, are obligated to (1) indemnify SureTec from losses, costs, fees and expenses incurred in connection with the Permit Performance Bond; and (2) post collateral with SureTec for SureTec's additional future losses and expenses that it anticipates that it will incur in connection with the Permit Performance Bond.

2. For reasonable attorneys' fees and costs incurred herein, according to proof;

3. For costs of suit herein; and

4. For such other and further relief deemed necessary and proper by the Court.

On the Fifth Cause of Action:

1. For damages in an amount according to proof, but not less than $91,314.00;

2. For reasonable attorneys' fees and costs incurred herein, according to proof;

3. For costs of suit herein; and

4. For such other and further relief deemed necessary and proper by the Court.

Dated: August 14, 2008

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.

By: [signature]
Robert C. Niesley
Attorneys for Plaintiff
SureTec Insurance Company, Inc.

IRVINE 131506.1 102594.001

**EXHIBIT A**

SureTec

EnDev Enterprises, LLC

# GENERAL AGREEMENT OF INDEMNITY

**This General Agreement of Indemnity, herein called the "Agreement," is made and executed this 8th day of August, 2007 by the undersigned, herein called the "Indemnitors," in favor of, and for the benefit of, SureTec Insurance Company and its co-sureties, reinsurers, and other sureties through whom it may procure the execution of bonds and undertaking, herein collectively called the "Company."**

**Witnesseth:**

**WHEREAS**, in the transaction of business certain bonds, guaranties, obligations of suretyship, undertakings and other writings obligatory in the nature of a bond or ancillary thereto (all such bonds, guaranties, obligations, and undertakings being collectively referred to herein as "bonds") may have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the Indemnitors in whose bonds the Indemnitors do hereby affirm to have a substantial material and beneficial interest, and as a condition precedent to the execution of any and all such bonds, the Company requires execution of this General Agreement of Indemnity.

**NOW, THEREFORE**, in consideration of these premises, and of the execution or continuance of such bonds, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators, personal representatives, assigns and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, have any interest or participation, whether open or silent, now in existence or which may hereafter be created or acquired, jointly and severally agree with, and make this General Agreement of Indemnity in favor of, and for the benefit of, the Company as follows:

1. The Indemnitors shall pay to the Company, at its home office at 952 Echo Lane, Suite 450, in the City of Houston, Harris County, Texas, premiums, fees, and charges at the rates and at the times specified by Company, and will continue to pay the same when such premium, fee, or charge is annual and when additional premiums, fees, or charges are due for changes to underlying bonded obligations. Premiums are due and payable upon execution of bonds and upon renewal thereof. The Indemnitors shall be liable for additional and renewal premiums hereunder until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or liability arising therefrom, and until the Indemnitors shall deliver to the Company at its home office in Houston, Texas, competent written evidence, satisfactory to the Company, of the Company's discharge from all liability on such bond or bonds. The Indemnitors shall also pay to Company, its affiliates, or to third parties, as the case may be, all underwriting, inspection, funds disbursement, escrow, special handling, filing, recording, and similar fees required or charged in connection with the underwriting, execution, or administration of any bonds.

2. The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefor, including, but not limited to, court costs, mediation and facilitation fees and expenses, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement. In the event the Company deems it necessary to respond to, make an investigation of, or settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred

1791254002

internally or otherwise, and wheth. or not Indemnitor has offered to defend Co .any, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand. In the event of payments by the Company, a voucher, affidavit, bordereaux or other evidence of such payments are prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefor to the Company. In the event that Indemnitors are covered by any insurance policy or policies for any matter or claim that may be brought against Company, or for which Company may have any exposure or liability, the coverage under such insurance policy or policies shall be primary. Indemnitors waive any and all claims of subrogation against Company.

3. *Payment of loss or deposit of collateral shall be made to the Company by the Indemnitors as soon as liability* exists or is asserted against the Company, whether or not the Company shall have made any payment therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its sole judgment, shall deem sufficient to protect it from loss. The Company shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement. If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral security to the Company for such liability or loss. Indemnitors acknowledge that there is no adequate remedy at law for the breach of this provision and that payment of damages would not adequately compensate Company for such breach. Accordingly, Company may compel Indemnitors to specifically perform these obligations pursuant to applicable law.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its home office, 952 Echo Lane, Suite 450, Houston, Texas, 77024.

5. The Company shall have the right to settle, compromise, prosecute, or defend any claim or action brought against the Company or any Indemnitor upon or relating to any bond or by any Indemnitor against a third party relating to any bonds or any interests granted herein. Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.

6. The Company, and its designated agents, consultants, and representatives, shall at any and all reasonable times, have free access to the books and records of the Indemnitors. Indemnitors consent to Company's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to any of the individual Indemnitors. Any bank, depository, creditor, credit bureau or credit reporting agency, obligee of a bond, subcontractor, material supplier, claimant, prior surety, agent, or other person, firm or corporation possessing records or having information concerning the financial affairs and records or having information concerning the current or past financial affairs and operations of the Indemnitors is hereby authorized to furnish to the Company and its representatives, consultants, and affiliates, any such records or information requested by the Company. Indemnitors will execute, as requested by the Company, any additional documents necessary to cause the release and production of records and information authorized by this paragraph.

7. In the event the Indemnitors, or any of them, shall (a) fail to pay any premium or underwriting charge or fee when due, or (b) fail to pay any amounts due hereunder, (c) abandon, forfeit or breach a bonded contract or obligation, or have been alleged to have abandoned, forfeited, or breached any such contract, (d) breach or be declared to have breached any bond issued by or at the request of Company, (e) have proceedings instituted against them, or any them, alleging that they are insolvent, or for the appointment of a receiver or trustee for the benefit of creditors, whether such Indemnitor(s) are insolvent or not, (f) have proceedings instituted against them, or any of them, the effect of which may be to deprive any of them of the use of any part of the equipment, funds, or assets used in connection with the work under bonded contract so as to hinder, delay or impede the normal satisfactory progress of the work, (g) fail to cooperate with Company in the investigation of claims made or threatened to be made against Company, or (h) the Company shall become insecure or unsure of the Indemnitors' willingness or ability to perform their obligations hereunder, and irrespective of whether Indemnitors have been declared in default under any bond or undertaking, the Company shall have the right, but not the obligation, to: (x) take possession of the work and under any other contract in connection with which the Company has given its bond or bonds within the purview of this Agreement and, at the expense of the Indemnitors, to continue performance of the contract(s), or cause, consent to, or arrange for, the completion thereof, (y) direct the obligees under such bonds to hold or forward contract proceeds and retainages due, earned, or to become due or earned, under the contract to the Company or its designees for disbursement or offset against other obligations of Indemnitors to

17912540002

Company as it deems necessary . advisable, and/or (z) take such other and further action as the Company may, in its sole discretion, deem advisable, prudent, or necessary.

8. Indemnitors shall pay interest on, and interest shall accrue on, all unpaid indebtedness of Indemnitors to Company at an interest rate equal to the lesser of: (a) eighteen percent (18%) per annum or (b) the Highest Lawful Rate (as such term is defined below). Interest on unpaid premiums shall not begin to accrue, however, until 45 days following the date of execution of a bond, or the renewal of a bond, by Company or its attorney-in-fact. Notwithstanding any other provision herein, the aggregate interest rate charged under this Agreement, including all charges, fees, or other payments in connection herewith or therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. It is the intention of Company and Indemnitors to conform strictly to any applicable usury laws. Accordingly, if Company contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at Company's option be applied to the outstanding principal balance due hereunder or be refunded to Indemnitors. As used in this paragraph, the term "Highest Lawful Rate" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to Company which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable laws now allow.

9. As further security, the Indemnitors hereby grant to the Company a security interest in, and lien on, all of their equipment, machinery, plant, inventory, insurance policies, vehicles, tools, real property, and materials, as well as sums, claims, causes of action, accounts, accounts receivable, and rights due or to become due in connection with any contract, whether or not bonded by Company. This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes and a deed of trust or mortgage, as applicable, and may be filed by the Company without notice to perfect the security interests and liens granted herein. The Company may add schedules, property descriptions, and other documents to this Agreement as necessary and may sign a copy of this Agreement, or copy thereof, where required for filing as a Financing Statement or to otherwise perfect any interest granted herein. For the purpose of recording this Agreement, a photocopy of this Agreement acknowledged by a representative of Company before a Notary Public as being a true copy hereof shall be regarded as an original. The grant of the security interest and lien position, and any efforts to perfect same, are in addition to, and not in abrogation of, substitution for, nor restriction of any and all rights which the Company has or may have under this Agreement, at law, or in equity.

10. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Company and its designees as their attorney-in-fact with the right, power, and authority, but not the obligation, to exercise all of the rights and powers of the Indemnitors assigned, transferred, and set over to the Company in this Agreement, and in the name of the Indemnitors, or any one or more of them, to make, endorse, execute, sign, and deliver any and all additional or other instruments and writings, including, but not limited to, assignments, financing statements, documents, instruments, checks, drafts, deposit, ACH, and wire transfer directives and orders, change of address notices, liens and releases thereof, applications, certificates, draw requests, orders, releases, and papers deemed necessary or desirable by the Company, and to collect the proceeds thereof, in order to give full effect not only to the intent and meaning of the obligations assumed, and the agreements made, by Indemnitors hereunder, and the assignments and conveyances made herein, but also the full protection intended to be herein given to the Company under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Company and its designees as such attorney-in-fact. The powers and authority granted herein shall not be affected by the disability or incapacity of the Indemnitors or any one or more of them.

11. The Indemnitors understand and agree that the circumstances, financial or otherwise, of any one or more of the Indemnitors may change substantially over the period of this agreement and the Indemnitors therefore agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors and of the risks being engaged in so that the Indemnitors are always aware of the risks of hazards in continuing to act as Indemnitors. The Indemnitors hereby expressly waive any requirement for notice from the Company of any fact or information coming to the notice or knowledge of the Company affecting its rights or the rights or liabilities of the Indemnitors.

12. In the event of any claim or demand being made by the Company against the Indemnitors, or any one of more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle or compromise with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and the Indemnitors

1791254000Z

hereby expressly waive the right to be discharged by reason of the release of one or more of the Indemnitors, and hereby consent to any settlement or compromise that may hereafter be made.

13. The Company is not required, by reason of any application for a bond or by reason of having issued a previous bond, bid bond, "bondability letter," or otherwise, to execute or procure the execution of or participate in the execution or renewal of any further bond or bonds. The Company, at its sole option and without assigning any reason therefor, may decline to execute or to participate in or procure the execution or renewal of any bond without impairing the validity of this Agreement or incurring any liability to Indemnitors. Any promise or agreement by Company or its representatives to issue or execute any bond or undertaking in the future shall be revocable at will by Company unless and until such bond or undertaking is properly authorized and issued by Company. Company's failure or refusal to issue final bonds after bid bonds or other proposal guarantees have been issued shall not excuse Indemnitors from their liability to indemnify and hold Company harmless from any loss or claim against such bid bond or proposal guarantee, nor shall such failure or refusal give rise to any cause of action in favor of Indemnitors for alleged losses of anticipated profits or other benefits.

**14. The Indemnitors acknowledge and agree this it is their sole responsibility to provide the proper forms for the bonds to be executed by the Company, and to review and approve any bond and undertaking executed by the Company on its own forms. Neither the Company, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Company with the proper forms or to object to forms furnished by the Company. It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Company for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Company and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Company issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Company as surety on the proposed bond, and neither the Company, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Company as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Company, for the timely delivery of any bond to the obligee. The Company and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the Company or its agents.**

**15. The Indemnitors agree that the Company's liability, if any, to the Indemnitors, or to any of them, on account of any acts or omissions by the Company or any of its consultants, affiliates, agents, or representatives (whether such acts or omissions arise in tort, negligence, trespass, breach of contract, by statute, or at law) arising out of or relating to any bonds or any other conduct of the Company or its agents, representatives, employees, attorneys, attorneys-in-fact, adjustors, or consultants is hereby expressly limited to an amount not to exceed the premium actually paid to the Company for such bond.**

16. If the Company procures the execution of such bonds by or for other companies, including specifically, but without limitation, **American Contractors Indemnity Company, Texas Bonding Company,** or **U.S. Specialty Insurance Company,** or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of, and may be enforced by, such other companies, co-sureties and reinsurers as their interests may appear. A written statement, signed by an officer of SureTec Insurance Company, attached to a copy of this Agreement before or after execution hereof by Indemnitors, confirming procurement of execution, co-surety, or reinsurance by such other companies, shall be prima facie evidence of the rights of such other companies hereunder and shall be binding on Indemnitors to the same extent as if such companies were named as the Company herein in the first instance. Any action to enforce this Agreement may be brought in the name of such other companies without the necessity of joinder of Company.

17. The liability of the Indemnitors hereunder shall not be affected by the failure of the Indemnitors, or any one or more of them, to sign any contract, bond, rider, undertaking, or this Agreement, nor by any claim that other indemnity, security, or collateral was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral, nor the forbearance or neglect in the enforcement of any requirements relating to the disbursement, administration or control or contract proceeds, that may have been obtained or occurred. If any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other Indemnitor. The Company may, but shall not be obligated to, accept other and further Agreements of Indemnity from Indemnitors or others, and may allow Indemnitors or additional indemnitors to execute Agreements of

17912540002

Indemnity in multiple counterparts. It is understood and agreed that the execution of multiple, successive, replacement, or additional Agreements of Indemnity or the release or partial release or the capping of liability of some of the Indemnitors shall not operate to release Indemnitors. Indemnitors waive any and all claims that such other or additional Agreements of Indemnity constitute novations, substitutions or releases of the Indemnitors.

18. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, only upon written notice, of not less than thirty (30) days, sent by registered mail to the home office of the Company, 952 Echo Lane, Suite 450, Houston, Harris County, Texas 77024. In no event, however, shall any such termination notice operate to modify, bar, discharge, limit, affect or impair the liability of the party sending such termination notice, with respect to, upon or by reason of any and all such bonds executed prior to a date thirty (30) days after the date of the Company's actual receipt of such notice in its home office as aforesaid. Any such termination notice shall not operate to modify, bar, discharge, limit, affect or impair the liability of non-terminating Indemnitors, with respect to, upon or by reason of any and all bonds issued by Company.

19. The Indemnitors understand and agree that this document is a continuing agreement to indemnify over an indefinite period and that bonds issued by the Company may vary widely in amounts and nature and that the Indemnitors will be bound by all such bonds, and any changes in the amounts of such bonds or underlying obligations, whether or not Company consents to such changes. The Indemnitors shall continue to remain bound under the terms of the Agreement even though the Company may from time to time, heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity, collateral, or conditions in connection with the procurement of bonds, from Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Company may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded Company under this Agreement.

20. This General Agreement of Indemnity is governed by, and shall be interpreted in accordance with, the laws of the State of California without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of California to be applied. All of Indemnitors' duties and obligations under this Agreement are due, payable, and performable in San Diego, San Diego County, California. If any provision or provisions, or portion thereof, of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof, were omitted and the other provisions shall remain in full force and effect.

21. This General Agreement of Indemnity applies to bonds written by or at the request of Company as surety, co-surety, or reinsurer on behalf of the undersigned Indemnitors, or any of them, and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have any interest or participation whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

22. The Indemnitors hereby warrant and represent the accuracy of all financial statements submitted or to be submitted to the Company, and covenant and agree that the assets described therein are dedicated to and imposed with a trust for the purpose of this Agreement of Indemnity and for the benefit of the Company.

23 Except where prohibited by law, Indemnitors hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by Surety under the laws of the United States or of any state or province or of any other government.

24. All monies due and to become due under any contract or contracts covered by bonds issued by the Company are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations for which the Company would be liable under any of said bonds, which said trust also inures to the benefit of the Company for any liability or loss it may have or sustain under any of said bonds, and this Agreement shall constitute notice of such trust.

1791254000002

25. THE UNDERSIGNED INDEMNITORS REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT CONSISTING OF THIS PAGE, THE PRECEDING PAGES, AND ANY PAGES WHICH FOLLOW, AND THAT THERE ARE NO OTHER PROMISES, AGREEMENTS OR UNDERSTANDINGS

WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE UNDERSIGNED INDEMNITORS RECOGNIZE THAT THE ABOVE AND FOREGOING AGREEMENTS INCLUDE BROAD RIGHTS IN FAVOR OF COMPANY AND LIMITATIONS ON THE LIABILITY OF COMPANY AND ITS AGENTS FOR CERTAIN ACTS AND OMISSIONS, INCLUDING NEGLIGENT ACTS AND OMISSIONS. THE EFFECTIVE DATE OF THIS AGREEMENT OF INDEMNITY SHALL BE THE DAY AND YEAR FIRST ABOVE WRITTEN, REGARDLESS OF THE DATE OR DATES ON WHICH THE UNDERSIGNED MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE COMPANY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE COMPANY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND OR UNDERTAKING FOR INDEMNITORS OR ANY OF THEM.

**Corporation**

Name: EnDev Enterprises, LLC
By: James Watson Brennan, Inc,
a California Coporation, Its manager

By: [signature]
Signature

Printed Name & Title:
James W. Brennan, President
501 W. Broadway, 19th Floor, San Diego, CA 92101
Street or P.O. Box City State/Zip

**Trust**

Name: Brennan Family Trust

By: [signature], Trustee
Name: James W. Brennan, Trustee

By: [signature], Trustee
Name: Lauren Brennan, Trustee

647 Loring Street, San Diego, CA 92109
Street or P.O. Box City State/Zip

**Individual**

Name: James W. Brennan

By: [signature]
Signature

647 Loring Street, San Diego, CA 92109
Street or P.O. Box City State/Zip

**Individual**

Name: Lauren Brennan

By: [signature]
Signature

647 Loring Street, San Diego, CA 92109
Street or P.O. Box City State/Zip

17912540002

## Trust Notary Acknowledgment

State of California §
County of San Diego §
§

On this 7th day of August 2007, before me personally appeared James W. Brennan personally known to me (~~or proved to me on the basis of satisfactory evidence)~~ to be the person whose name is subscribed to the within instrument and acknowledged to me that he/~~she~~ executed the same in his/~~her~~ authorized capacity as the Trustee of Brennan Family Trust, said Trust, and that by his/~~her~~ signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

HEATHER MARIE THOMASELLI
Commission # 1630193
Notary Public - California
San Diego County
My Comm. Expires Dec 15, 2009

Heather Marie Thomaselli
Notary Public
Commission Expires Dec. 15, 2009

## Trust Notary Acknowledgment

State of California §
County of San Diego §
§

On this 7th day of August 2007, before me personally appeared Lauren Brennan personally known to me (~~or proved to me on the basis of satisfactory evidence~~) to be the person whose name is subscribed to the within instrument and acknowledged to me that ~~he~~/she executed the same in ~~his~~/her authorized capacity as the Trustee of Brennan Family Trust, said Trust, and that by ~~his~~/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

HEATHER MARIE THOMASELLI
Commission # 1630193
Notary Public - California
San Diego County
My Comm. Expires Dec 15, 2009

Heather Marie Thomaselli
Notary Public
Commission Expires Dec 15, 2009

## Individual Notary Acknowledgment

State of California §
County of San Diego §
§

On this 7th day of August 2007, before me personally appeared James W. Brennan personally known to me (~~or proved to me on the basis of satisfactory evidence~~) to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within and foregoing instrument, and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument, the person~~(s)~~ executed the instrument.

17912540002

WITNESS my hand and official seal

HEATHER MARIE THOMASELLI
Commission # 1630193
Notary Public - California
San Diego County
My Comm. Expires Dec 15, 2009

Heather Marie Thomaselli
Notary Public
Commission Expires Dec. 15, 2009

## Individual Notary Acknowledgment

State of California §
§
County of San Diego §

On this 7th day of August 20 07, before me personally appeared

Lauren Brennan

personally known to me (~~or proved to me on the basis of satisfactory evidence~~) to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within and foregoing instrument, and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity(~~ies~~), and that by ~~his~~/her/~~their~~ signature(~~s~~) on the instrument, the person(~~s~~) executed the instrument.

WITNESS my hand and official seal

HEATHER MARIE THOMASELLI
Commission # 1630193
Notary Public - California
San Diego County
My Comm. Expires Dec 15, 2009

Notary Public
Commission Expires Dec 15, 2009

## Corporate Notary Acknowledgment

State of California §
§
County of San Diego §

On this 7th day of August 20 07, before me personally appeared

James W. Brennan

personally known to me (~~or proved to me on the basis of satisfactory evidence~~) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/~~she~~ executed the same in his/~~her~~ authorized capacity as the President of James Watson Brennan, Inc., said corporation, and that by his/~~her~~ signature on the instrument the perso~~n~~, or the entity upon behalf of which the person acted, executed the instrument.
WITNESS my hand and official seal

Notary Public
Commission Expires Dec 15, 2009

HEATHER MARIE THOMASELLI
Commission # 1630193
Notary Public - California
San Diego County
My Comm. Expires Dec 15, 2009

1791254000 2

Job Location:

1202-1226 UNIVERSITY AVE.
SAN DIEGO, CA

Work Order No. 427802

Permit No. PTS# 129434

Agency DOLE INSURANCE AGENCY

Address P.O. BOX 400
BONITA, CA 91908

Bond No. 4357041

Premium $ 3,564.32

PERMIT PERFORMANCE BOND
**(Specific Job)**

KNOW ALL MEN BY THESE PRESENTS: That UNIVERSAL HILLCREST, LLC

as, and hereinafter without regard to gender and number, called PRINCIPAL, and SURETEC INSURANCE COMPANY

a corporation authorized to do business in the State of California and presently possessed of authority under Title 6 of the United States Code to do business under Sections 6 to 13 thereof, in the aggregate amounts hereof, as SURETY, are held and firmly bound unto THE CITY OF SAN DIEGO, a municipal corporation in the County of San Diego, State of California, in the sum of

ONE HUNDRED FIFTY THREE THOUSAND TWO HUNDRED SIXTEEN AND 00/100
DOLLARS ($ 153,216.00 ), for the payment of which sums well and truly to be made, the said Principal and their said Surety hereby bind themselves and all and singularly their heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

Signed, sealed with our seals, and dated this 30th day of NOVEMBER, 2007

The Principal may perform certain work in the City of San Diego, and is desirous of securing a permit for such work in said City in accordance with Article 9, Chapter 12, of the San Diego Municipal Code.

The condition of the above obligation is such that if the said Principal shall comply with Article 9 Chapter 12, of the San Diego Municipal Code and such other sections of said Code as may be applicable, then this obligation shall be void, otherwise to remain in full force and effect.

THE CONDITION OF THIS OBLIGATION is such that if the said Principal shall faithfully perform the covenants, conditions and agreements contained in a certain Permit about to be issued to said Principal by THE CITY OF SAN DIEGO, for a specific job named in the permit, and shall furnish materials in compliance with the specifications and perform all that certain work and improvements in said City which is more particularly described in said Permit, to which Permit reference is hereby made for further particulars, then the obligation with respect to the faithful performance of said Permit shall be void, otherwise to remain in full force and effect.

If the said Principal or his subcontractors, their heirs, executors, administrators, successors and assigns shall fail to pay for any materials, provisions, provender, or other supplies or items used in, upon, for or about the performance of the work permitted to be done, or for any work or labor thereon of any kind, then said Surety will pay the same in or to an amount not exceeding the amount hereinabove specified to be for the benefit of laborers and materialmen, and also will pay, in case suit is brought upon this bond, such reasonable attorney's fee as shall be fixed by the court, awarded and taxed as provided by law.

This bond, to the extent of the obligation hereof with respect to laborers and materialmen, shall inure to the benefit of any and all persons, companies and corporations entitled to file claims under Title 15 (commencing with Section 3028) of Part 4 of Division 3 of the Civil Code of the State of California, so as to give a right of action to them or their assigns in any suit brought upon this bond.

And the said Surety, for value received, hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the Permit or to the work to be performed thereunder or the specifications accompanying the same shall in any wise affect its obligations on this bond, and it does hereby waive notice of any such change, extension of time, alterations or addition to the terms of the Permit or to the work or to the specifications.

IN WITNESS WHEREOF, the said Principal and Surety have executed this instrument the day and year first hereinabove written.

UNIVERSAL HILLCREST, LLC
(Principal)

By____________________
(Signature)

____________________
(Print Name & Title)

By____________________
(Signature)

____________________
(Print Name & Title)

SURETEC INSURANCE COMPANY
(Surety)

By____________________
ROBERT P. DOLE, ATTORNEY-IN-FACT

**NOTE: Notary acknowledgments (for all signatures) must be attached, per Civil Code 1180 et. Seq.**

APPROVED

City Engineer

By____________________
Permit Engineer

EXHIBIT C

SureTec

July 31, 2008

Paul S. Metsch
Solomon Ward Seidennwurm and Smith
401 B Street, Ste. 1200
San Diego CA 92101

Via E-Mail & U.S. Mail

Re: Universal Hillcrest
Bond No. 4357041

Dear Mr. Metsch:

I am enclosing a copy of the general indemnity agreement (GIA) which your clients signed as consideration for issuance of the bond.

I think it is necessary for me to absolutely clarify SureTec's position in this matter. We fully expect the principal and all indemnitors to liquidate personal assets before we have to pay a loss under the bond. This is, essentially, what they agreed to do when they signed the GIA. When you represented to me they have no liquidity, I took that quite literally but, unless they have already disposed of all their assets, we absolutely expect them to resolve this claim. The Rand claim is not huge, but SureTec is not a bank. We took indemnity and took their promise to place us in funds in the event of claims to prevent this very situation or, in a worse case scenario, to ensure we are ultimately made whole.

This letter constitutes formal demand for your clients (Universal Hillcrest, EnDev Enterprises, James and Lauren Brennan and the Brennan Family Trust) jointly and severally to indemnity SureTec and deposit collateral in the amount of $96,614 pursuant to paragraphs 2 and 3 of the GIA. Said collateral must be in a form acceptable to the surety. Failure to provide said collateral within 10 days will result in SureTec taking immediate steps to enforce all of the provisions of the GIA. In the meantime, I have forwarded the GIA to the California Secretary of the State for filing as UCC-1 interest against the assets pledged in the GIA. If we have not been provided adequate liquid assets as collateral within the ten day period, we will also use the power of attorney granted in the GIA to record a Trust Deed against all real estate covered by the GIA (all real estate listed in any financial statements).

You have very generally outlined a plan whereby the principals plan to sell the property and pay creditors from the proceeds of the escrow. While this may truly be the only viable asset, we have no evidence of this which is why I requested copies of tax returns (corporate, partnership and personal), bank account statements, or other evidence that your clients cannot fund this claim. If they cannot fund the payment or supply cash collateral, they may wish to discuss specific collateral positions on real estate and other assets instead of the blanket positions we are about to perfect.

3033 5th Avenue ◦ Suite 300 ◦ San Diego, CA 92103 ◦ 619.400.4100 ◦ Toll Free 800.288.0351 ◦ Fax 619.400.4101

Paul, if your clients are insolvent, they are insolvent. We will have to deal with it. If, however, it is merely inconvenient for them to pay this debt, or may be costly for them to pay this debt, we remind them that we did not sign on to be their involuntary bankers. If you want us to proceed any other way than as we have outlined, we need some solid facts, some explanations and need to know they have truly exhausted every conceivable source of cash to pay this claim. We haven't seen it yet.

Please call me if you have any questions about this letter or the GIA.

Cordially,

Cynthia J. Vincent
Director, West Coast Claims

Encs: cc of GIA

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED
2008 AUG 14 PM 3:34
CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: KMT DEPUTY

**I. (a) PLAINTIFFS**
SureTec Insurance Company, Inc.

**(b)** County of Residence of First Listed Plaintiff: Harris County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert C. Niesley, Esq., Watt, Tieder, Hoffar & Fitzgerald, L.L.P., 2040 Main Street, Suite 300, Irvine, CA 92614 (949) 852-6700

**DEFENDANTS**
Universal Hillcrest, LLC; et al.

County of Residence of First Listed Defendant: San Diego, California
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 1490 IEG NLS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

ORIGINAL

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28USC1332

Brief description of cause:
Breach of Contract/Indemnity

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 91,314.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: 08/13/2008

SIGNATURE OF ATTORNEY OF RECORD: Robert C. Niesley

**FOR OFFICE USE ONLY**

RECEIPT # 154058 AMOUNT $350.00 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

TB 08/14/08

CR

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 154058 - MB

August 14, 2008
15:30:31

Civ Fil Non-Pris
USAO #.: 08CV1490 CIVIL FILING
Judge..: IRMA E GONZALEZ
Amount.: $350.00 CK
Check#.: BC8102

Total-> $350.00

FROM: SURETEC INSURANCE CO VS
UNIVERSAL HILLCREST LLC